[Cite as *State ex rel. Jackson v. Sycamore Community City School Dist. Bd. of Edn.*, 2026-Ohio-2916.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |  |
|---|---|---|---|
| STATE OF OHIO, EX REL. DONALD JACKSON, | : | APPEAL NO. | C-250578 |
|  |  | TRIAL NO. | A-2501447 |
| Relator-Appellee, | : |  |  |
|  | : |  |  |
| vs. | : |  |  |
|  | : | *JUDGMENT ENTRY* |  |
| BOARD OF EDUCATION OF THE SYCAMORE COMMUNITY CITY SCHOOL DISTRICT, | : |  |  |
|  | : |  |  |
| SARA B. BITTER, | : |  |  |
|  | : |  |  |
| VICTOR L. HARRIS, JR., | : |  |  |
|  | : |  |  |
| PAUL M. BALENT, | : |  |  |
|  | : |  |  |
| ADRIENNE C. JAMES, | : |  |  |
|  | : |  |  |
| and | : |  |  |
|  | : |  |  |
| LYNNE STIEGER, | : |  |  |
| Respondents-Appellants. | : |  |  |
|  | : |  |  |

This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

## OHIO FIRST DISTRICT COURT OF APPEALS

**To the clerk:**

**Enter upon the journal of the court on 7/29/2026 per order of the court.**


**By:**_____
**Administrative Judge**

[Cite as *State ex rel. Jackson v. Sycamore Community City School Dist. Bd. of Edn.*, 2026-Ohio-2916.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, EX REL. DONALD JACKSON, | : | APPEAL NO. | C-250578 |
| | | TRIAL NO. | A-2501447 |
| | : | | |
| Relator-Appellee, | : | | |
| vs. | : | | |
| | : | *O P I N I O N* | |
| BOARD OF EDUCATION OF THE SYCAMORE COMMUNITY CITY SCHOOL DISTRICT, | : | | |
| | : | | |
| SARA B. BITTER, | : | | |
| VICTOR L. HARRIS, JR., | : | | |
| PAUL M. BALENT, | : | | |
| ADRIENNE C. JAMES, | : | | |
| and | : | | |
| LYNNE STIEGER, | : | | |
| Respondents-Appellants. | : | | |
| | : | | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: July 29, 2026

*The Law Firm of Curt C. Hartman, Curt C. Hartman*, *The Finney Law Firm, LLC,* and *Christopher P. Finney*, for Relator-Appellee,

*McCaslin, Imbus & McCaslin* and *Bernard W. Wharton*, for Respondents-Appellants.

**MOORE, Judge.**

{¶1} Respondents-appellants the Sycamore Community City School District Board of Education ("the Board of Education") and its individual members (collectively, "the Board") filed this interlocutory appeal following the Hamilton County Court of Common Pleas' conditional grant of relator-appellee Donald Jackson's motion to compel and denial of the Board's motion for a protective order. On appeal, the Board argues that the court erred in granting Jackson's motion to compel and asserts that the communications are protected under both the executive-session privilege and the attorney-client privilege.

{¶2} The existence of the "executive session privilege" is not yet a justiciable question. As explained below, because the trial court expressly declined to address the existence of the privilege, we are precluded from doing so for the first time on appeal.

{¶3} However, the question of the applicability of the attorney-client privilege is properly before this court. Based on our review of the record, the Board failed to establish that the communications were protected under the privilege. Like the court's conditional grant of Jackson's motion and conditional denial of the Board's motion, our holding does not preclude the Board from reasserting the privilege in response to the questions authorized by the trial court.

## I. Factual and Procedural History

{¶4} On September 18, 2024, the Board of Education met in regular session. The attendees included Chad Lewis, the superintendent for the Sycamore Community City School District ("the District"), Sara Bitter, the president of the Board of Education, David Lampe, counsel for the Board of Education, Mallory Bonbright, the communications director for the District, and other members of the Board of Education. Also in attendance was Danielle Scrase, a teacher who worked in the

District. Scrase served as the president of the teacher's union, the Sycamore Education Association ("SEA").

{¶5} During the regular session, which was open to the public, Lewis was informed that Scrase had texted Bonbright a disparaging message. Lewis shared this message with Bitter, which prompted Bitter to request the Board of Education to go into executive session following the close of the regular session meeting. The Board of Education voted and agreed to enter executive session.

{¶6} When Lewis was asked during his deposition whether Scrase was discussed during the September executive session, Lewis declined to comment and stated that discussions had during executive session are confidential under statute.

{¶7} In the months following the September executive session, Lewis continued to investigate Scrase and discovered other malfeasance. Lewis testified during his deposition that he consulted with and was advised by Lampe on Scrase's potential punishment. On December 17, Lewis disciplined Scrase by putting her on a 45-day suspension. Lewis testified in his deposition that, as superintendent, the District's bylaws vested him with the power to impose the suspension, so he did not need approval from the Board to do so.

{¶8} On January 8, 2025, the SEA filed a grievance in response to the suspension. The grievance claimed that the suspension violated the collective-bargaining agreement between the SEA and the District, and that the suspension was not supported by sufficient evidence. Lewis testified that he worked with Lampe to try to resolve the grievance.

{¶9} On January 22, 2025, the Board of Education held another regular session meeting before entering executive session. Bitter testified during her deposition that she asked Lampe to attend the executive session to advise the school

board on the discipline issued to an employee. The minutes reflect that executive session was entered "to consider the employment, compensation, dismissal, discipline of a public employee and the investigation of charges or complaints against a public employee, official, licensee, or regulated individual (see ORC 121.22(G)(1))." The minutes reflected that "no action was taken during the executive session."

{¶10} The next day, the SEA, Scrase, and the Board entered into a settlement agreement resolving the grievance. The agreement resulted in Scrase's suspension being reduced from 45 days to 15 days.

{¶11} On March 24, 2025, Jackson, a resident living within the Sycamore Community School District, filed a complaint against the Board. The complaint asserted that the Board violated Ohio's Open Meetings Act when it approved the settlement agreement in executive session, and that it was obligated to conduct formal action in an open, public meeting. Jackson contended that the settlement agreement should be invalidated and that he was entitled to a civil forfeiture pursuant to R.C. 121.22(I)(2)(a).

{¶12} The defendants filed their answer to the complaint, and discovery followed. Jackson issued a notice of deposition for one of the members of the Board of Education, and in response the Board filed a motion for a protective order. The Board's motion noted that from conversations with Jackson's counsel he intended to depose the Board's members about the conversations had during the January executive session. The Board's motion was denied.

{¶13} Following the denial of the protective order, Jackson took both Lewis's and Bitter's depositions. When Jackson asked questions concerning what was discussed during the January executive session, whether Scrase was the subject of the executive session, and whether the Board contemplated the possibility of a settlement,

deponents' counsel routinely objected. Counsel's offered basis for the objection was that communications from the executive session were privileged under the executive-session privilege, and that the communications were protected under the attorney-client privilege.

{¶14} Following these depositions, the Board filed a second motion for a protective order, which was followed by Jackson's motion to compel. Jackson's motion asserted that the "executive session privilege" does not exist, and that the Board failed to offer sufficient detail to demonstrate that the attorney-client privilege applied to discussions during the January executive session. In Jackson's motion to compel were several pages of questions concerning both the September and January executive sessions, to which the Board objected and asserted the privileges.

{¶15} The court heard oral arguments on the parties' motions. Despite Jackson's request at oral argument that the court find that the General Assembly never created the executive-session privilege and that it does not exist as a matter of law, the court declined to do so, and instead stated,

> The Court herein today decides that I do not have to determine whether the executive session privilege, as [counsel for Jackson] would like me to do, I don't have to decide whether the general assembly has specifically adopted a so-called executive session privilege under 121.22(G), and the same reason I don't have to find that is there's enough information that 121.22(H) has invalidated the executive session privilege.

{¶16} As to the Board's claim that the communications were subject to the attorney-client privilege, the court stated,

> The Court further finds as to the attorney-client privilege, just because

7

the attorney is in the room, that does not – under the *State ex rel. Leslie v. Ohio Housing Finance Agency*, [2005-Ohio-1508], [satisfy] the Supreme Court's eight-part test.

(Cleaned up.)

{¶17}  The court granted Jackson's motion to compel as it related to 12 specific questions for Bitter and four specific questions for Lewis that were not answered concerning the January executive session. This interlocutory appeal followed.

## II.  Analysis

{¶18}  The Board's sole assignment of error contends that the court's grant of Jackson's motion to compel, as well as the court's denial of the Board's request for a protective order was erroneous. The Board raises two issues in support: (1) that the court abused its discretion when it failed to apply the executive-session privilege, and (2) that the court erred as a matter of law when it concluded that communications during the January executive session were not subject to the attorney-client privilege.

### A.  First Assignment of Error

{¶19}  We typically review a trial court's resolution of a discovery dispute for an abuse of discretion. *Ward v. Summa Health Sys.*, 2010-Ohio-6275, ¶ 13, citing *Tracy v. Merrell Dow Pharmaceuticals, Inc.*, 58 Ohio St.3d 147, 151-152 (1991). "But where a 'trial court's discovery order involve[s] the application or construction of statutory law regarding privilege, we review the order de novo.'" *Schram v. Masadeh*, 2024-Ohio-1662, ¶ 16 (1st Dist.), quoting *Spurgeon v. Mercy Health-Anderson., LLC,* 2020-Ohio-3099, ¶ 7 (1st Dist.).

{¶20}  The party invoking a privilege bears the burden of demonstrating that the privilege applies. *Spurgeon* at ¶ 7, citing *Watkins v. Good Samaritan Hosp. of Cincinnati, Ohio*, 2016-Ohio-7458, ¶ 13 (1st Dist.).

**{¶21}** However, as an appellate court, we are limited to reviewing issues ruled upon by the trial court. *Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 89 (1992) (holding that where a trial court declined to address an issue, the court of appeals could not pass judgment on that issue because it was not properly before it).

### 1. Executive-Session Privilege

**{¶22}** The issue of whether an executive-session privilege exists is not properly before this court. The trial court declined to answer that question. The trial court bypassed resolving this question, and concluded that even if the privilege applied, the Board's conduct violated R.C. 121.22(H). Because the trial court declined to decide the question of whether an executive-session privilege exists, it is not ripe for appellate review. "[A]n appellate court limits its review to issues actually decided by the trial court in its judgment." *Lycan v. City of Cleveland*, 2016-Ohio-422, ¶ 21, citing *Bowen* at 89; *see Fast Tract Title Servs. v. Barry*, 2024-Ohio-5216, ¶ 42 (8th Dist.), quoting *Crestmont Cleveland Partnership v. Ohio Dept. of Health*, 139 Ohio App.3d 928, 935 (10th Dist. 2000) ("'[A]ppellate courts . . . do not address issues that the trial court declined to consider . . . . In such a situation, the appellate court should reserve judgment until such time as the undecided issues are considered by the trial court and that decision is appealed.'").

**{¶23}** Therefore, we decline to address the merits of this issue.

### 2. Attorney-Client Privilege

**{¶24}** "The attorney-client privilege, which covers records of communications between attorneys and their government clients pertaining to the attorneys' legal advice, is a state law prohibiting release of those records." *State ex rel. Hicks v. Fraley*, 2021-Ohio-2724, ¶ 11, citing *State ex rel. Besser v. Ohio State Univ.*, 87 Ohio St.3d 535, 542 (2000). The privilege applies "(1) [w]here legal advice of any kind is sought

(2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." *State ex rel. Leslie v. Ohio House Fin. Agency*, 2005-Ohio-1508, ¶ 21.

{¶25} "The burden to show that testimony or documents are confidential or privileged is on the party seeking to exclude the material." *Schram*, 2024-Ohio-1662, at ¶ 16 (1st Dist.), quoting *Grace v. Mastruserio*, 2007-Ohio-3942, ¶ 19 (1st Dist.). A party's invocation of the privilege because that party's counsel was in the room during discussions is insufficient to establish that the communications are protected under the attorney-client privilege. *Maddox v. Bd. of Commrs.*, 2014-Ohio-1541, ¶ 7 (2d Dist.), citing *Fabbrini v. City of Dunsmuir*, 2008 U.S. LEXIS 50155, *7 (E.D.Cal. June 19, 2008).

{¶26} The Board's mere assertion that counsel was present during the executive session was insufficient to establish that the communications were protected under the attorney-client privilege. *See id.* at ¶ 7. On the record before us, we cannot say that the responses to the questions approved by the trial court are protected by the attorney-client privilege. Therefore, we cannot conclude that the trial court erred by ordering that counsel for Jackson could ask the questions listed in the court's order. However, because the trial court labeled the entry as a "conditional" denial of the Board's motion for a protective order, nothing would preclude the Board from later reasserting the privilege in response to the deposition questions approved by the trial court along with its explanation for why it thinks the attorney-client (or some other) privilege is applicable.

{¶27} Having declined to address the merits of the Board's first issue in

support as not being ripe for review and having overruled the Board's second issue in support, we overrule the Board's sole assignment of error.

### III. Conclusion

{¶28} The Board's sole assignment of error is overruled, the judgment of trial court is affirmed.

Judgment affirmed.

**KINSLEY, P.J.,** concurs.
**ZAYAS, J.,** concurs separately.

**ZAYAS, J.**, concurring separately.

{¶29} I concur in the majority's opinion. I write separately to add additional analysis for the reasons explained herein.

### I. Brief Background

{¶30} Relator-appellee Donald Jackson initiated the instant action against respondents-appellants the Board of Education of the Sycamore Community City School District and its individual members (collectively referred to as "the Board"), alleging that the Board violated the Open Meetings Act under R.C. 121.22 when it "agreed to enter or otherwise authorized a settlement agreement," during an executive session, concerning the "efforts to discipline" a teacher and the president of the local teacher's union, Danielle Scrase. Jackson asserted that this "formal action of approving and/or authorizing the execution of the settlement agreement" during the executive session invalidated the settlement agreement under R.C. 121.22(H).

{¶31} Later, during discovery, the Board moved the trial court for a protective order limiting Jackson's "inquiry into the specifics of executive-session discussion and into the specifics of attorney-client privilege." In doing so, the Board did not dispute that it discussed the grievance filed by Scrase at its January 2025 executive session.

11

However, it claimed that it did not "vote upon or approve the agreement to settle the grievance" because the collective-bargaining agreement with the teacher's union authorizes the superintendent to resolve grievances, which he did. Respondent-appellant Sara Bitter—the president of the Board ("the board president")—averred in an affidavit that "[a]t no point in that executive session did the Superintendent solicit a vote or approval from the Board of Education as to whether the Board of Education supported or opposed an agreement to settle the grievance." Of note here, the Board argued that "any communications" during an executive session are confidential under R.C. 121.22(G) and 102.03(B).

{¶32} The trial court denied the Board's request on the basis that the Board was seeking to prohibit discovery of information that it claimed was "confidential" and not privileged.

{¶33} Thereafter, the Board filed a second motion for a protective order and Jackson filed a motion to compel. In the Board's motion, it asserted that objections were made at the recent depositions of the board president and the superintendent based on "executive session confidentiality privilege" and attorney-client privilege. Relevant here, the Board made the same argument that communications made during an executive session are confidential under R.C. 121.22(G) and 102.03(B). In Jackson's motion, he sought to compel the board president and the superintendent, as well as any other deponents representing the school district, to answer questions at their depositions "concerning or relating to matters considered, discussed, debated or decided in the [September 2024 and January 2025 executive sessions]." Relevant here, he argued that the General Assembly has not adopted an "executive session privilege" that would "prohibit discovery in civil litigation concerning matters considered, discussed, debated or decided in an executive session held under R.C.

121.22(G)." He further argued that, even if there was an executive-session privilege, any purpose for the privilege is no longer being served where "the actions or decisions of public officials resulting from communications, discussions, or deliberation in an executive session have come to fruition."

**{¶34}** After hearing arguments on the motions, the trial court "conditionally" granted Jackson's motion to compel—but only as to the January 2025 executive session and not the September 2024 executive session—and denied the Board's second motion for a protective order.

## II. Differing Views of the Trial Court's Decision

**{¶35}** Of relevance here, the trial court held that, even assuming a so-called executive-session privilege exists, the record contained enough information to determine that "[R.C.] 121.22(H) has *invalidated* the executive-session privilege." (Emphasis added.) The Board acknowledges this finding, asserting, "The trial court did not address whether the executive session privilege exist[s] under Ohio law as [the Board] wished the court to do so, rather, the Trial Court found that *the executive session privilege was invalidated under R.C. § 121.22(H).*" (Emphasis added.) Jackson similarly acknowledges this finding and asserts that "the trial court concluded that the provisions of R.C. 121.22(H) *negated or invalidated any claimed executive session privilege,*" and offers that "the effectiveness of such a declaration by the trial court is a conclusion that there is not an executive session privilege when it concerns *potential* invalidation of matters illegally considered, discussed, debated, or decided in an executive session." (Emphasis added.)

**{¶36}** Nevertheless, the majority interprets the trial court's statement as a ruling on the merits that the Board *violated* R.C. 121.22(H). It therefore concludes that this issue falls outside the scope of this limited interlocutory appeal. I agree that

any decision on the merits under R.C. 121.22(H) would be beyond the scope of this appeal. However, I do not read the trial court's decision that way. Instead, I agree with the parties' reading of the plain text of the trial court's order. The trial court made only a discovery-related finding. I therefore write separately to address the Board's arguments regarding that finding, to the extent it relates to discovery.

{¶37} While I note that the dispute concerning the existence of a so-called executive-session privilege under R.C. 121.22(G) and 102.03(B) appears to arise from a failure to properly distinguish between confidential and privileged information, I do not reach the issue of whether this so-called executive-session privilege exists under Ohio law as the trial court bypassed this question and made a determination simply assuming that the claimed privilege exists. I do the same here when addressing the trial court's decision.

### III. The Trial Court's Decision

{¶38} The trial court "conditionally" granted Jackson's motion to compel, in part, "[f]or the reasons set forth on the record." On the record, the trial court first set forth its preliminary determination that it would not compel discovery related to the September 2024 executive session. In doing so, the court looked to the product of the executive session to determine whether there was any indication in the record that the executive session was not held "according to the Ohio Open Records Rule." Because the product of the September 2024 executive session was the letter of suspension issued to Scrase that was signed solely by the superintendent in his official capacity, with no indication that he was signing on behalf of the Board, the trial court determined that the record only indicated a properly held executive session and thus declined to compel discovery as to this session. When counsel asked the court to clarify its position as to the September 2024 session, the court stated,

14

So the executive session on September 18th, 2024, you don't have anything improper there. It was noted correctly in the minutes, and afterwards the result was the superintendent -- not the board -- the superintendent issued the December 17th letter.

So we're only going to focus your request for discovery on the January 22nd, 2025, meeting because the result of the January 22, 2025, meeting was the school board -- not the superintendent -- the school board made the settlement agreement.

**{¶39}** Thus, because the product of the January 2025 meeting was the settlement agreement that was signed by the superintendent *on behalf of the board*, rather than simply in his official capacity, the court narrowed the focus of the motion to compel to only the January 2025 session as the record indicated that this session may not have been held in accordance with R.C. 121.22.

**{¶40}** The Board argued that it was required to be a party to the settlement agreement as it pertained to a grievance under the collective-bargaining agreement but asserted that it delegated resolution of the grievance to the superintendent as is permitted under the collective-bargaining agreement. The Board in essence claimed that it acted properly under the law where it was permitted to delegate this authority to the superintendent and it did so, while only properly discussing the "discipline and investigation into charges against a public employee" at the executive session. It asserted that the actions taken by the superintendent on behalf of the Board are public record and did not require a formal vote in an open meeting to resolve. Thus, the Board argued that there was no basis for additional discovery as Jackson already received "the discovery he needs on the merits of his case." The Board asserted, "I understand he may not like the evidence because it shows he has no merits, but he has

it. He doesn't need what was discussed in executive session to address the merits of his case."

{¶41} In response, Jackson argued that "the issue is what occurred in the executive session and whether the board of education complied with the Open Meetings Act in limiting discussions appropriately, or did they exceed the requirements of the act in the executive session." He asserted that the ability of the superintendent to sign the settlement agreement on the Board's behalf was a "red herring because the question is what happened in the executive session." He described the issue as, "Did the board discuss, debate, and give the green light to proceed that way?" He argued, "When the superintendent signs an agreement on behalf of the Board of Education the very next morning after an executive session, something's rotten in Denmark."

{¶42} The Board then asserted,

> In an executive session to talk about the discipline or investigation into conduct of a public employee, even if the superintendent has the right to resolve it as he does here, it is still a good practice for him to let his employers, the school board, know what he's is [sic] doing with respect to those things.

> [Jackson] believes that there was some sort of informal voting or agreement by the school board to approve the settlement agreement. He doesn't have evidence of that, and he wants to fish into the executive session to see if there's evidence of that; but [the superintendent], as the superintendent in good practice as a good superintendent would do, keeps his board involved and apprised of developments.

{¶43} When the trial court asked the Board why it didn't just come out and

approve the grievance settlement agreement in the minutes, the Board indicated that it did not formally vote or take any action on the settlement agreement. Rather, "[t]he superintendent resolved it." The trial court responded, "But that's not what the documents say. The documents say that the school board did it."

{¶44} Accordingly, the trial court ultimately determined that, even assuming the executive-session privilege exists, "there's enough information that 121.22(H) has *invalidated the executive session privilege.*" (Emphasis added.) The trial court said that, although it agrees with the Board that it "need not formally approve any grievance settlement agreement," "it *appears* from the documents that are provided in the complaint that the school board did agree to it." (Emphasis added.)

{¶45} The record shows that the trial court found that R.C. 121.22(H) *invalidated any claim of privilege*, not that the settlement agreement was *invalid* under R.C. 121.22(H). The trial court found that, because it "appears" from the documents in the record that the Board did agree to the settlement agreement, R.C. 121.22(H) mandates that Jackson is entitled to discovery to determine whether the Board did in fact approve the settlement agreement at the January 2025 executive session. Thus, the trial court "conditionally" granted the motion to compel.

{¶46} Notably, the trial court did not find any discovery requests related to this session to be moot, as would be the expected outcome if the trial court had found that the Board violated R.C. 121.22(H). Rather, the outcome of the trial court's decision was an order for the Board to answer questions directly related to the settlement agreement and whether it was discussed at the January executive session, including whether the Board discussed potential resolution of the grievance, a potential reduction in the suspension imposed, or any of the terms within the grievance settlement agreement.

**{¶47}** Accordingly, the trial court's determination is a discovery-related finding only and consequently I address the Board's arguments pertaining to this finding in this limited appeal as they relate to the Board's claim of privilege.

## IV. The Board's Arguments on Appeal

**{¶48}** The Board first argues that the trial court "erred in abrogating the executive session privilege under [R.C. 121.22(H)] because the trial court specifically found that the Board was not required to approve the grievance settlement agreement and could defer to [the superintendent] to do so." However, this argument ignores the trial court's additional finding that, despite being able to defer to the superintendent, the record "appears" to show that the Board nevertheless *did* approve the settlement agreement during the executive session.

**{¶49}** The Board further appears to argue that the grievance settlement agreement was not a "rule, resolution or formal action taken by the Board so as to violate R.C. 121.22(H)." However, this argument again derives from the assertion that the Board was permitted to delegate approval of the settlement agreement to the superintendent, and it did so. Such an argument is unpersuasive as it again ignores the trial court's finding that the record "appears" to show that the Board nevertheless *did* approve the settlement agreement during the executive session.

**{¶50}** The Board last argues that allowing the Board and its administrators to be questioned about the content of the executive session "would undermine the [G]eneral [A]ssembly's purpose in creating exceptions to the open meetings act for executive sessions." However, R.C. 121.22(H) clearly shows that the General Assembly did not intend for any claim of confidentiality during executive sessions to shield potential violations of R.C. 121.22. Therefore, I again find the Board's argument to be

unpersuasive.[1]

**{¶51}** Accordingly, the Board has failed to show that the trial court erred in finding that R.C. 121.22(H) invalidated the so-called executive-session privilege.

### *V. Conclusion*

**{¶52}** For the reasons explained by the majority and for the additional reasons explained herein, I concur in the majority's opinion overruling the Board's sole assignment of error.

---

[1] I offer no opinion as to how discovery of this information should be conducted or whether the information would be subject to any lawfully provided protections such as confidentiality.